In re Petition of Concerned Citizens of Ward 17, Precinct L.

(No. 55599—Decided March 1, 1984.)

Court of Common Pleas of
Cuyahoga County.

*Mr. John Pyle,* for petitioners.

James J. McMonagle, J. This matter came before this court pursuant to a petition of qualified electors of the city of Cleveland contesting a vote on a local liquor option held at the general election of November 2, 1982 concerning Ward 17, Precinct L. This local option was couched in the following manner: "Shall the sale of intoxicating liquor of the same types as may be legally sold in this Cleveland Ward 17, Precinct L, on other days of the week, be permitted in Cleveland Ward 17, Precinct L for consumption on the premises where sold, between the hours of 1:00 P.M. and midnight on Sunday?" This was approved by a vote of 137 yes, 133 no, thereby permitting Sunday sales of alcohol. On February 8, 1983, the Cuyahoga County Board of Elections certified the election results, and this contest petition was seasonably filed on February 23, 1983 in accordance with R.C. 3515.08 *et seq.* Constitutional guarantees of an individual whose actions were intertwined with this election delayed trial until February 25, 1984. The contestors claim that the results of the election were obtained because of voter fraud and other irregularities and, therefore, question the fairness of the result.

The public policy of this state and this country is to indulge every reasonable presumption and intendment in favor of the validity of an election instead of holding it void. *Beck* v. *Cincinnati* (1955), 162 Ohio St. 473 [55 O.O. 373]. This policy has recently been reaffirmed in the case of *MacDonald* v. *Bernard* (1982), 1 Ohio St. 3d 85, 86, wherein the Supreme Court held that "[t]he survival of our system of government requires that proper respect be given to the will of the people as expressed at the ballot box." The adherence to these principles developed the following test which must be met before a court may reach a decision that would result in the disfranchisement of the voters:

"Where irregularities in an election are so great and so flagrant in character as to render it impossible to separate the illegal from the legal votes and raise a doubt as to how the election would have resulted had such irregularities not occurred, they must be deemed fatal to the validity of the election and warrant the rejection of the entire vote of the election district." *Otworth* v. *Bays* (1951), 155 Ohio St. 366 [44 O.O. 344], paragraph one of the syllabus.

What has evolved, therefore, is a two-step test this court must apply in determining the merits of the contestor's claim:

(1) Was there fraud or irregularity at the election of November 2, 1982, and

(2) If there was fraud or irregularity present, was it so great and flagrant as to render the election results doubtful?

The testimony and exhibits presented

to this court centered around a structure located at 7604 Lorain Avenue, an address which was in the political subdivision which would be affected by the outcome of this election. This building housed a saloon on the first floor and contained four sleeping rooms on the upper floor. An employee of the saloon, William Litos, had established himself as a volunteer registrar as permitted by law in Ohio and took it upon himself to initiate the local option and also register a large number of citizens so that they could vote in the November 1982 election.

James Columbo of the Cuyahoga County Prosecutor's Office in conjunction with the board of elections and the sheriff's office investigated his activities and developed that Litos violated the election laws in the following manner:

1. He knowingly induced an individual to register in the affected precinct when the individual was not a qualified voter;

2. He knowingly aided or abetted others to sign the local option election petition even though the individuals were unqualified;

3. He knowingly did counsel or advise another to vote at an election knowing the other individual was not a qualified voter; and

4. He knowingly aided or assisted another to go or come into this precinct for the purpose of voting illegally.

Witnesses further testified that on election day in November 1982, Litos was observed handing out pieces of paper to patrons of the bar with the names of individuals whom he had previously registered to vote. This court could only infer the purpose of this was to prepare the individuals to have the correct name and spelling of that name to present at the polling place when they voted illegally. There was also evidence indicating that anyone who voted at the election would be rewarded with a drink.

In addition, the following was presented at trial:

1. Evidence of the twenty people voting at the election who listed their address as 7604 Lorain Avenue even though there were only four sleeping rooms with one double bed in each;

2. Evidence of a voter voting both in Tennessee and Cleveland on election day;

3. Evidence of forgery both on the poll books and the voter registration cards;

4. Evidence indicating a forged or unauthorized change of address card submitted to the board of elections;

5. Evidence of a voter who on the day of election was living in St. Augustine, Florida, but still voted in the election; and

6. Evidence of a voter who indicated that he "sort of" voted in that he was driven to the polling booth but was too drunk to walk into the polling place so he sent someone else in to vote for him.

This court finds that the evidence of fraud and irregularities was obvious, odious and obnoxious. The closeness of this vote when put in perspective with the enormity of the fraud can only lead to the conclusion that the election results are uncertain. This court must jealously insure the holding of a free, fair and honest election in accordance with the laws of the state of Ohio.

The ballot box is more than a symbol. It receives our thoughts and wishes and acts upon our hopes for a better tomorrow. The evidence presented demonstrated in this case that the election process was tampered with and this will not be countenanced.

It is, therefore, ordered, adjudged and decreed that the election of November 2, 1982 concerning the sale of intoxicating liquor in Cleveland Ward 17, Precinct L is set aside and void.

The clerk is directed to serve a certified copy of this order upon the Cuyahoga County Board of Elections, and this shall work as a cancellation of the certificate of the results of this election.

*Judgment accordingly.*